**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **GWIN, INC.** § | | |
| § | | |
| **Plaintiff** § | | |
| § | | |
| vs. § | | |
| § | | |
| **DON BEST SPORTS, VEGAS INSIDER.COM,** § | | |
| **VEGASEXPERTS.COM, PREFERRED PICKS** § | | |
| **PUBLICATIONS, INC., and SPORTS DIRECT,** § | **CASE NO. 2:06-CV-318** |
| **INC.** § | **PATENT CASE** |
| § | | |
| **Defendants** § | | |

## MEMORANDUM OPINION

This Memorandum Opinion construes the terms in United States Patent No. 6,260,019 (the "'019 Patent").

## BACKGROUND

The '019 Patent, which issued on July 10, 2001, discloses an electronic marketplace for prediction information over a communications network. Particularly, the '019 Patent covers a method and apparatus for facilitating transactions between prediction suppliers and prediction consumers. Prediction suppliers provide their predictions on the outcomes of future events. The system tracks the prediction suppliers' accuracy. Prediction consumers can view prediction suppliers' track records and obtain predictions from prediction suppliers. A supplier is compensated, either by the consumers or by advertisers, based upon the number of consumers who view the supplier's predictions.

Winning Edge, Inc. ("Winning Edge"), formerly known as GWIN, Inc., is the assignee of the '019 Patent. Winning Edge claims Don Best Sports, Vegas Insider.com, Preferred Picks

Publications, Inc., and Sports Direct, Inc. (collectively "Defendants") infringe on various claims of the '019 Patent.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he

specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id*. Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

   Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid

a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

## CLAIM TERMS

**Providing an Electronic Marketplace of Predictions Over a Communications Network**

Claims 1 and 17 contain, in the preamble, the term "providing an electronic marketplace of predictions over a communications network." Defendants claim this language means "providing a marketplace for predictions over the Internet." Defendants further claim the preamble limits the scope of the claim to methods that "provid[e] a marketplace for predictions over the Internet."

Winning Edge claims the preamble does not limit the scope of the claims and contends "providing an electronic marketplace of predictions over a communications network" means "providing a plurality of suppliers and a plurality of consumers and an electronic hub, or 'marketplace,' such as a Web site, for conducting transactions including supplying and consuming predictions of future events. The electronic marketplace is accessible over a communications network, such as the Internet."

Courts determine whether a preamble limits a claim only after a review of the entire patent to understand what the inventors actually invented and intended the claim to encompass. *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989)). While there is no litmus test to determine when a preamble limits the scope of the claims, in general a preamble limits the invention if it recites essential steps or structure, or if the preamble is "necessary to give life, meaning, and vitality" to the claim. *Id.* (quoting *Pitney Bowers, Inc. v. Hewlett-Packard Co.*,

182 F.3d 1298, 1305 (Fed. Cir. 1999)). In contrast, a preamble does not limit the claim when the claim body describes a structurally complete invention and the preamble only states a purpose or an intended use for the invention. *Id.* (quoting *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)).

The preamble in claims 1 and 17 states a purpose or intended use for the invention. The bodies of claims 1 and 17 describe functionally complete methods without the preamble. Further, nothing in the '019 Patent suggests the preamble limits the claimed methods or that the claimed methods are limited to "providing a marketplace for predictions over the Internet." While the specification discloses a prediction marketplace over the Internet, the inventor chose to direct his invention to an "electronic network-based marketplace" and disclosed marketplace transactions that do not, in part, occur over the Internet or electronically. '019 Patent, col. 1:7–9 ("The present invention is directed to an electronic network-based marketplace for supplying and consuming predictions of future events."); *id.* at col. 9:48–59 (describing embodiment where purchaser uses monies pre-paid by check, money order, credit card, bank deposit, or other manner to pay for purchased prediction information); *id.* at col. 12:34–58 (describing embodiment where a marketplace facilitator pays a prediction supplier via a mailed check, a monetary credit on the supplier's credit card, or a direct deposit to the supplier's bank account, among other forms of payment). Thus, claims 1 and 17 are not limited to methods that provide a marketplace for predictions over the Internet. As the preamble does not limit the claims, it does not require construction. *Altris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1371 (Fed. Cir. 2003) (stating that if the preamble does not limit claim scope "the preamble is of no significance to claim construction"); *see also Ciena Corp. v. Nortel Networks Inc.*, No. 2:05cv14, 2006 WL 1133798, at *22 (E.D. Tex. Apr. 25, 2006) (Davis, J.) ("The preamble does not give life, meaning and vitality to the claim. Accordingly, the Court does not need to construe the term in the preamble.").

**Displaying a First Screen Requesting Identifying Information From a First Consumer, Determining at Least One Performance Metric Reflective of the Accuracy of Said at Least One Prediction**

Claim 1 contains the term "displaying a first screen requesting identifying information from a first consumer, determining at least one performance metric reflective of the accuracy of said at least one prediction."  The parties dispute the construction of "determining at least one performance metric . . ." and whether the claims require performance of the "displaying" and "determining" steps in sequence.  Defendants do not substantively disagree with Winning Edge's construction of "displaying a first screen requesting identifying information from a first consumer" but contend the term does not require construction.

Displaying a First Screen Requesting Identifying Information From a First Consumer

Winning Edge contends "displaying a first screen requesting identifying information from a first consumer" means "presenting a display window requesting identifying information from a consumer, such as a user name and password."  Defendants do not substantively disagree with Winning Edge's construction but contend the term does not require construction.

A lay jury will understand the term "displaying a first screen requesting identifying information from a first consumer."  Thus, the term does not require construction.  *See Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 738 (E.D. Tex. 2005) (Davis, J.) (declining to construe claim terms and noting "although every word used in a claim has a meaning, not every word requires construction").

Determining at Least One Performance Metric Reflective of the Accuracy of Said at Least One Prediction

Winning Edge claims "determining at least one performance metric reflective of the accuracy of said at least one prediction" means "to find out by investigation or calculation at least one performance metric specifically indicative of the accuracy of the prediction."  Defendants contend

6

the term means "automatically calculating (i.e. without human intervention) a metric reflecting the accuracy of at least one prediction from the supplier of one or more predictions." The dispute centers on the construction of "determining" and whether the claims require the method to "automatically" determine "at least one performance metric reflective of the accuracy of said at least one prediction."

One of ordinary skill in the art would understand that within the context of the '019 Patent, "determining" means "calculating." The claim language implicitly requires a calculation to produce the "at least one performance metric reflective of the accuracy of the at least one prediction," and the "determining" step is the only step that could perform the calculation. The specification is consistent with the claim language and describes various metrics, all of which require some calculation based upon a predictor's historical record. *Id.* at col. 6:60–col. 7:22 (describing various performance metrics, including ratings point accumulation, ratings points ratios, and daily average of difference between won and lost ratings points). Thus, "determining" means "calculating."

One of ordinary skill in the art would also understand the claims do not require an automatic calculation. The claim language does not require the method to automatically determine or calculate "at least one performance metric specifically indicative of the accuracy of the prediction."

The specification does not indicate the method requires automatic calculation of "at least one performance metric specifically indicative of the accuracy of the prediction." The specification discloses embodiments wherein the user provides performance metric calculation criteria and initiates the calculation of performance metrics based upon that criteria. *Id.* at col. 6:19–54. In these embodiments, the user defines a relevant prediction performance time period and orders the system to calculate performance metrics based upon each predictor's historical performance over the time period. *Id.* Subsequently, the system calculates a performance metric, such as ratings points, over

7

the user's selected time period and displays the performance results of the best prediction suppliers to the user. *Id.* at col. 6:47–col. 7:22.

Defendants note the specification touts the benefits of "on-the-fly" metrics updates. However, this functionality is not the essence of the invention and does not limit the claims. *See Teleflex*, 299 F.3d at 1326 (stating "limitations from the specification are not to be read into the claims"). Thus, for the abovementioned reasons, "determining at least one performance metric reflective of the accuracy of said at least one prediction" means "calculating a metric reflecting the accuracy of at least one prediction from the supplier of one or more predictions."

Whether the "Displaying" and "Determining" Steps Must Occur Sequentially

Defendants assert the claim language requires the "displaying" and "determining" steps to occur sequentially. Winning Edge contends the claim is not limited to a method that performs the "displaying a first screen requesting identifying information from a first consumer" step before the method performs the "determining at least one performance metric reflective of the accuracy of said at least one prediction" step.

Courts generally do not construe method claims to require the method be performed in the order written. *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003) (quoting *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342–43 (Fed. Cir. 2001)). However, courts limit a method claim to cover only methods performed in the order written if the method steps actually recite an order. *Id.* If the method steps do not actually recite an order, courts may limit a method claim to cover only methods performed in the order written if the method steps implicitly require that they be performed in the order written. *Id.*

Method steps implicitly require performance in the order written in two instances. First, method steps implicitly require sequential performance if the claim language, as a matter of logic,

requires the steps be performed in the order written. *Id.* at 1369–70. (citing *Interactive Gift*, 256 F.3d at 1343). Second, if, as a matter of logic, the claim language does not require the steps be performed in the order written, method steps implicitly require sequential performance if the specification "directly or implicitly requires such a narrow construction." *Id.* at 1370 (quoting *Interactive Gift*, 256 F.3d at 1343).

The claim language does not actually recite an order for the "displaying" and "determining" steps. Further, logic does not require the method to "display[] a first screen requesting identifying information from a first consumer" before it "determin[es] at least one performance metric reflective of the accuracy of said at least one prediction," as the two steps are unconnected and nothing in the "determining" step requires completion of the "displaying" step.

Finally, the specification does not directly or implicitly require a narrow construction. While the disclosed embodiments disclose the "determining" step occurring after the user logs in, it is also consistent with the specification that the system calculates the performance metrics before the user logs in. *See* '019 Patent, col. 5:37–51 (describing embodiment where a user enters search parameters and the system queries a database and retrieves and displays stored data, such as performance metrics); *id.* at col. 6:19–7:22, col. 8:4–11 (describing embodiment where a user, before he logs in, can initiate the calculation of a performance metric and select a prediction supplier to view based upon that supplier's performance metric). Thus, the "displaying" and "determining" steps do not need to be performed sequentially, as the claim language does not recite an actual order and the patent does not directly or implicitly require performance of the steps in the order written.

**Metric**

Claim 1 contains the term "metric." Winning Edge contends "metric" means "a system of related measures that facilitates the quantification of some particular characteristic." Defendants

9

do not substantively disagree with Winning Edge's construction but contend "metric" does not require construction.

The term "metric" has a specific meaning within the context of the '019 Patent. *See* '019 Patent, Fig. 5A, col. 4:59–col. 5:33 (discussing performance link and building a performance record); *id.* at col. 6:64–col. 7:9 (discussing accounting of "rating points" to determine the top 25 prediction suppliers). Thus, the term requires construction. *Phillips*, 415 F.3d at 1312–13; *Alloc*, 342 F.3d at 1368.

The Court adopts Winning Edge's construction, as the parties do not substantively disagree on the construction of "metric." Thus, "metric" means "a system of related measures that facilitates the quantification of some particular characteristic."

**Debiting and Crediting Claim Terms**

Claims 1 and 2 contain the terms "debiting an account of said first consumer . . . " and ". . . [an] account of the first consumer. . . is debited . . . " Claims 1, 17, 23, 24, and 25 contain the terms "crediting an account [of the prediction supplier] . . . " and "credit an account of the selected prediction supplier." The parties' constructions[1] for the "debiting" and "crediting" terms raise two

---

[1] For the "debiting" terms, Winning Edge contends "debiting an account" means "making an electronic record of the transaction in which a supplier's prediction has ben displayed on request for charging the consumer for the specific transaction requested by the consumer. Payment may then be made in any of several ways, including by credit card, debiting a checking account or charging against a sum in a prepaid account."
  Winning Edge further claims "for requesting" means "upon request by the consumer such as by clicking a mouse through a selection menu or a series of hyperlinks to display and view the desired prediction of the supplier." Finally, Winning Edge defines the term "debit" as "a record of indebtedness; specifically: an entry on the left-hand side of an account constituting an expense or asset account or a deduction from a revenue, net worth, or liability account."
  Defendants contend "debiting an account of said first consumer for requesting said first supplier's predictions" means "electronically withdrawing funds directly from, or issuing a charge to, an account in the name of the consumer each time the consumer requests the supplier's prediction." At the *Markman* hearing, Defendants distanced themselves from the "directly" limitation. Defendants further assert that the claim language does not contain the term "debit," and thus "debit" should not be construed. The parties agree that the "debiting an account . . ." and ". . . is debited . . . " terms should have consistent constructions.
  For the "crediting" terms, Winning Edge contends "crediting an account of said first supplier, whose prediction for the first upcoming event has been displayed upon the request of said first consumer" means "making an electronic record of the transaction in which a supplier's prediction has been displayed on request for making periodic payments to that supplier." Winning Edge further contends "credit" means "an accounting entry system

10

related issues: (1) whether the debiting and crediting functions require a direct electronic withdrawal or deposit of funds or whether the debiting and crediting functions merely create transaction records; and (2) whether the debiting and crediting functions require a withdrawal or deposit of funds each time the consumer requests a supplier's prediction or if the debiting and crediting functions allow settling of the debt or aggregate payment to a supplier at a later time.

One of ordinary skill in the art, in the context of the '019 Patent, would understand the debiting and crediting functions are accounting functions and do not require a direct electronic transfer of funds each time the consumer requests a supplier's prediction. The ordinary meanings of debit and credit encompass accounting records and are distinct from payment.

Claim 1 requires "debiting" and "crediting" of an "account." *Id.* at col. 13:16–36. Claim 2, which depends on claim 1, limits the debited account to a prepaid account, a bank account, and a credit card account. *Id.* at col. 13:37–40. The claims' use of the term requires the "debiting" function to be consistent across all account types.

The specification confirms the terms' ordinary meanings. One embodiment allows a consumer to accumulate credits to purchase prediction information. *Id.* at col. 9:47–59. To accumulate credits, the consumer can pay the marketplace facilitator or the facilitator can give the consumer complimentary credits. *Id.* at Fig. 18, col. 9:47–53. The consumer can pre-pay by check, money order, credit card, bank account withdrawals, or another manner. *Id.* at col. 9:53–59. Thus,

---

that either decreases assets or increases liabilities; in general, it is an arrangement for deferred payment for goods and services."

  Defendants contend "crediting an account of said first supplier, whose prediction for the first upcoming event has been displayed upon the request of said first consumer" means "automatically depositing funds directly into an account of the prediction supplier for each time the supplier's prediction is displayed upon the request of the consumer." At the *Markman* hearing, Defendants distanced themselves from the "directly" limitation. Defendants further assert that the claim language does not contain the term "credit," and thus "credit" should not be construed. The parties agree that the "crediting an account . . ." and "credit an account . . . " terms should have consistent constructions.

the embodiment allows the facilitator to possess the monies before the consumer purchases prediction information and therefore does not require the withdrawal of funds each time the consumer purchases prediction information.

When the consumer decides to purchase prediction information, two windows display the consumer's selected form of payment, the consumer's available credit, and the consumer's credit balance after the sale completes. *Id.* at Fig. 19, col. 9:60–col.10:10. The specification also allows the consumer to pay for prediction information purchases with a credit card or other payment that involves a financial institution. *Id.* at col. 10:7–10. The patent does not indicate whether this function transfers funds for each purchase or whether the facilitator can periodically bill the consumer.

Upon purchase, the supplier accumulates credits and the marketplace facilitator pays the supplier from time to time, either periodically or when the supplier accumulates a predetermined amount of credits. *Id.* at col. 12:34–48 (describing prediction supplier payment under all embodiments); *see also id.* at col. 11:66–col. 12:33 (describing a "credited prediction" in context of embodiment where facilitator pays prediction suppliers based off the number of consumers who viewed the prediction suppliers' prediction information).

In total, the specification distinguishes between the debiting and depositing funds to the marketplace facilitator and between crediting and paying funds to a prediction supplier. Thus, the debiting and crediting functions do not require a direct electronic withdrawal or direct electronic deposit of funds and do not require a withdrawal or deposit of funds each time the consumer requests a supplier's prediction. The functions merely create a record of the transaction and are independent of when or how consumers pay the facilitator and when or how the facilitator pays the suppliers.

For the abovementioned reasons, "debiting an account" means "making an electronic record

of indebtedness" and "is debited" means "is recorded in an electronic record of indebtedness." The term "credit [crediting] an account" means "make [making] an electronic record of an arrangement for payment."

**Calculating Performance Information Reflective of the Accuracy of Said Predictions**

Claims 17, and 24 contain the term "calculating performance information reflective of the accuracy of said predictions." Winning Edge contends "calculate" means "to determine by mathematical process." Defendants claim "calculating performance information reflective of the accuracy of said predictions" means "automatically calculating information reflecting the accuracy of each of the suppliers of the predictions." Similar to the "determining" claim limitation, the dispute centers on whether the claim term requires automatic calculation of "performance information reflective of the accuracy of said prediction."

The reasons to not limit "determining" to automatic calculation apply with equal force. Thus, the claims do not require the "calculating" function to occur automatically. Further, a lay jury will readily understand the term "calculate," and it does not need construction. *See Orion IP*, 406 F. Supp. 2d at 738.

**Best Performance Records**

Claim 20 contains the term "best performance records." Winning Edge contends "best" is "understood in reference to the performance information calculated and transmitted to the prediction consumer." Winning Edge further states "[f]or example, if the performance information relates to a winning percentage over a user-selected time frame, 'best' would be understood as the highest performing individual or group of individual suppliers applying those criteria." Defendants contend the term "best performance records" is indefinite.

A claim is invalid under 35 U.S.C. § 112 ¶ 2 if it fails to particularly point out and distinctly

13

claim the subject matter the applicant regards as the invention. The party seeking to invalidate a claim under 35 U.S.C. § 112 ¶ 2 as indefinite must show by clear and convincing evidence that one skilled in the art would not understand the scope of the claim when read in light of the specification. *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1319 (Fed. Cir. 2003). A claim is not indefinite merely because it poses a difficult issue of claim construction. *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004).

Claim 17, which claim 20 depends on, claims a method that comprises the step of "calculating performance information reflective of the accuracy of said predictions made by each of said plurality of prediction suppliers." '019 Patent, col. 15:17–33. Claim 20 further requires the step of "transmitting performance information for predictions suppliers having the best performance records." *Id.* at col. 15:41–43. Thus, in the context of claim 20, the "performance information for prediction suppliers having the best performance records" is the calculated performance information for prediction suppliers who have the highest performance.

One skilled in the art would understand the scope of "best performance records" when read in light of the specification. Thus, the claim is definite. The specification describes an embodiment that allows a user to enter a number of parameters to define the "best predictor" search. *Id*. at Fig. 6, col. 5:37–43. The user subsequently clicks on the "GO!" button to retrieve a list of the best predictors given the user's search parameters. *Id.* at Fig. 6, col. 6:47–54. The system then displays a list of the "best predictors" based upon the calculated performance information reflective of the accuracy of each prediction supplier's predictions. *Id.* at Fig. 7 (displaying top 25 prediction suppliers with the highest amount of "rating points"); *id.* at col. 6:55–col. 7:22 (describing Fig. 7 and the calculation of "ratings points" and other performance information that reflects the accuracy of

each prediction supplier's predictions).

While Fig. 7 depicts a list of prediction suppliers with the top 25 performance records, one of ordinary skill in the art would understand the best performance records are not limited to the top 25 prediction suppliers and their performance information but could encompass transmittal of performance information for a different number of prediction suppliers. Of importance is, given the number of prediction suppliers that will be displayed, performance information is transmitted for those suppliers whose performance information indicates the supplier's predictions are sufficiently accurate to be transmitted.

For the abovementioned reasons, the term "best performance records" means "the one or more records that correspond to the best of the calculated performance information reflective of the accuracy of said predictions made by each of said plurality of prediction suppliers."

**Computer Storage Medium**

Claim 23 contains the term "computer storage medium." Winning Edge contends the term means "one or more devices or recording media into which data can be stored until some later time, and from which the data can be obtained." Further, Winning Edge claims "[t]he computer storage medium can include any of the following: semiconductor memory, disk drives or any other storage medium known to one of skill in the art." Defendants argue "computer storage medium" does not require construction. Winning Edge is willing to adopt Defendants' construction but continues to assert the correctness of its own construction.

A lay jury will understand the term "computer storage medium." Thus, the tem does not require construction. *See Orion IP*, 406 F. Supp. 2d at 738.

**Obtaining Performance Information**

Claim 25 claims "a method of obtaining prediction information." Winning Edge contends the preamble does not limit the claim. This term only appears in Winning Edge's Opening Brief on Claim Construction and was not included in the parties' P.R. 4-3 Joint Claim Construction Chart. Additionally, Defendants did not brief the term and apparently do not dispute Winning Edge's construction. Thus, "obtaining performance information" does not limit the claim and the term requires no construction. *TGIP, Inc. v. AT&T Corp.*, 512 F. Supp. 2d 696, 712 (E.D. Tex. 2007) (Clark, J.) ("The only terms that need to be construed are those 'that are in controversy, and only to the extent necessary to resolve the controversy.'") (quoting *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)); *see also Altris, Inc.*, 318 F.3d at 1371 (stating that if the preamble does not limit claim scope "the preamble is of no significance to claim construction").

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim interpretations are set forth in a table as Appendix B. The claims with the disputed terms in bold are set forth in Appendix A.

**So ORDERED and SIGNED this 11th day of February, 2008.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

**APPENDIX A**

**U.S. Pat. No. 6,260,019**

1. A method of **providing an electronic marketplace of predictions over a communications network**, the method comprising:
electronically receiving and storing at least one prediction of at least one supplier for at least one event whose outcome has not yet been determined;
**displaying a first screen requesting identifying information from a first consumer, determining at least one performance metric reflective of the accuracy of said at least one prediction**, after the outcome of the event has been determined;
displaying a second screen showing said performance **metric**, upon request by said first consumer;
displaying a first supplier's prediction for a first upcoming event to said first consumer, upon request by that consumer to view said first supplier's prediction;
**debiting an account of said first consumer for requesting said first supplier's prediction**; and
**crediting an account of said first supplier, whose prediction for the first upcoming event has been displayed upon the request of said first consumer**.

2. The method of claim 1, **wherein one of a prepaid account of the first consumer, a bank account of the first consumer, and a credit card account of the first consumer is debited for requesting said first supplier's prediction**.

2. The method of claim 1, wherein one of a prepaid account of the first consumer, a bank account of the first consumer, and a credit card account of the first consumer is debited for requesting said first supplier's prediction.

17. A method of **providing an electronic marketplace for predictions**, the method comprising:
receiving at least one prediction from each of a plurality of prediction suppliers;
**calculating performance information reflective of the accuracy of said predictions** made by each of said plurality of prediction suppliers;
transmitting said performance information to a prediction consumer;
receiving a request from said prediction consumer to purchase a new prediction from a prediction supplier selected by said prediction consumer;
transmitting said new prediction to said prediction consumer; and
**crediting an account of the prediction supplier** selected by the prediction consumer.

20. The method of claim 17, comprising transmitting performance information for prediction suppliers having the **best performance records**.

23. A **computer storage medium** comprising:
code for receiving at least one prediction from each of a plurality of prediction suppliers;
code for **calculating performance information reflective of the accuracy of predictions** made by each of said plurality of prediction suppliers;
code for transmitting said performance information to a prediction consumer;
code for receiving a request from said prediction consumer to purchase a new prediction from a prediction supplier selected by said prediction consumer;
code for transmitting said new prediction to said prediction consumer; and
code for **crediting an account of the prediction supplier** selected by the prediction consumer.

24. A computer programmed to:
receive at least one prediction from each of a plurality of prediction suppliers;
calculate performance information reflective of the accuracy of predictions made by each of said plurality of prediction suppliers;
transmit said performance information to a prediction consumer;
receive a request from said prediction consumer to purchase a new prediction from a selected prediction supplier;
transmit said new prediction to said prediction consumer; and

**credit an account of the selected prediction supplier**.

25. A method of **obtaining prediction information**, the method comprising:
viewing performance information reflective of the outcome of at least one past prediction made by at least one prediction supplier;
viewing which prediction information is available from at least one prediction supplier,
electing to purchase prediction information from a selected prediction supplier;
viewing said purchased prediction information; and
**crediting an account of the selected prediction supplier**.

**APPENDIX B**

| Ref. Nos. | Term or Phrase to be Construed (Claims) | Court's Construction |
|---|---|---|
| 1 | providing an electronic marketplace of predictions over a communications network (claim 1) | *No construction required* |
|  | providing an electronic marketplace of predictions (claim 17) | *No construction required* |
| 2 | displaying a first screen requesting identifying information from a first consumer (claim 1) | *No construction required* |
| 3 | determining at least one performance metric reflective of the accuracy of said at least one prediction (claim 1) | calculating a metric reflecting the accuracy of at least one prediction from the supplier of one or more predictions |
| 4 | metric (claim 1) | AGREED – a system of related measures that facilitates the quantification of some particular characteristic |
| 5 | debiting an account (claim 1) | making an electronic record of indebtedness |
|  | is debited (claim 2) | is recorded in an electronic record of indebtedness |
| 6 | crediting an account (claim 1, 17, 23, 25) | making an electronic record of indebtedness |
|  | credit an account (claim 24) | make an electronic record of indebtedness |
| 7 | calculating performance information reflective of the accuracy of said predictions (claims 17, 23) | *No construction required* |
| 8 | best performance records (claim 20) | the one or more records that correspond to the best of the calculated performance information reflective of the accuracy of said predictions made by each of said plurality of prediction suppliers |
| 9 | computer storage medium (claim 23) | *No construction required* |
| 10 | obtaining prediction information (claim 25) | *No construction required* |