**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **RENHCOL Inc.** § <br> § <br> **Plaintiff** § <br> § <br> vs. § <br> § <br> **DON BEST SPORTS, VEGAS INSIDER.COM,** § <br> **VEGASEXPERTS.COM, PREFERRED PICKS** § <br> **PUBLICATIONS, INC.,  SPORTS DIRECT, INC.,** § <br> **and COVERS MEDIA GROUP, LTD.** § <br> § <br> **Defendants** § | **CASE NO.  2:06-CV-318** <br> **PATENT CASE** |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Sports Direct, Inc. and Covers Media Group, Ltd's (collectively, "Defendants") Motion for Summary Judgment (Docket No. 140).  After consideration of the parties' arguments and written submissions, the Court **GRANTS** Defendants' motion as to whether Defendants make, sell, or offer for sale within the United States the invention claimed in claims 23, 24, and 25 and whether Defendants import into the United States the invention claimed in claims 23, 24, and 25.  The Court further **GRANTS** Defendants' motion as to whether Defendants use within the United States the invention claimed in claim 25 and whether Defendants infringe claim 25 under 35 U.S.C. § 271(b) and (c).  The Court **DENIES** Defendants' motion as to whether Defendants use within the United States the invention claimed in claims 23 and 24 and whether Defendants infringe claims 23 and 24 under 35 U.S.C. § 271(b) and (c).

## BACKGROUND

Plaintiff[1] alleges Defendants infringe on various claims of U.S. Pat. No. 6,260,019 (the "'019 Patent). The '019 Patent discloses an electronic marketplace for prediction information over a communications network. Particularly, the '019 Patent covers a method and apparatus for facilitating transactions between prediction suppliers and prediction consumers. Prediction suppliers provide their predictions on the outcomes of future events. The system tracks the prediction suppliers' accuracy. Prediction consumers can view prediction suppliers' track records and obtain predictions from prediction suppliers. A supplier is compensated, either by the consumers or by advertisers, based upon the number of consumers who view the supplier's predictions.

Plaintiff alleges Defendants infringe claims 23, 24, and 25 of the '019 Patent. Claim 23 claims a computer storage medium that comprises code for performing functions that facilitate transactions in the electronic marketplace for prediction information. Claim 24 claims a computer programmed to perform the functions claimed in claim 23. Claim 25 claims a method for obtaining prediction information that comprises viewing a prediction supplier's performance record, viewing availible prediction information, electing to purchase prediction information, viewing the purchased prediction information, and crediting an account of the prediction supplier.

Defendants are Canadian and Irish corporations that conduct hosting, content development, and financial operations that relate to two accused websites. Defendants conduct these activities outside the United States. Defendants claim the code for the accused websites is, and has always been, written outside the United States and the computers and servers that host the code are, and have always been, located outside the United States. Defendants engage foreign banks to process

---

[1] In September 2007, Winning Edge, Inc., formerly known as GWIN, Inc., assigned the '019 Patent to Renhcol, Inc. On April 1, 2008, Plaintiff filed an amended complaint to reflect this change. Amended Complaint (Second) (Docket No. 40).

customer payments and to process payments to handicappers. Defendants determine the amount of money to pay handicappers for correct predictions, and Defendants make this determination outside the United States.

Defendants claim they do not make, use, sell, or offer for sale the claimed invention within the United states and claim they do not import the claimed invention into the United States, as the computer storage medium and computer code are located in Canada and the method steps are performed in Canada and Ireland. Defendants move for summary judgment of noninfringement on that basis.

## APPLICABLE LAW

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). An issue of material fact is genuine if the evidence could lead a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue for trial exists, the court views all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986).

If the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must assert competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996);

*Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The party opposing summary judgment is required to identify evidence in the record and articulate the manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Summary judgment must be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

## ANALYSIS

An alleged infringer directly infringes on a patent if the infringer, without authority, "makes, uses, offers to sell or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). To show direct patent infringement, the patentee must show someone performed the prohibited acts with a product or process that infringes at least one asserted claim. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997) (stating inquiry to determine direct patent infringement is "[d]oes the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?").

Section 271(a) has a limited territorial reach and is only actionable against infringement that occurs within the United States. *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1313 (Fed. Cir. 2005) (citing cases). Infringement under § 271(a) is not necessarily precluded if a component that reads on an element of the claimed invention is located outside the United States. *See id.* (citing *Decca Ltd. v. U.S.*, 544 F.2d 1070 (Ct. Cl. 1976)).

In the context of § 271(a), courts interpret the term "use" broadly to determine if behavior

constitutes an infringing "use"[2] of a patented invention. *See NTP*, 418 F.3d at 1316–17. The ordinary meaning of "use" is "to put into action or service." *Id.* (citing *Webster's Third New Dictionary* 2523 (1993)).

The situs of use of a claimed system[3] is "the place at which the system as a whole is put into service, *i.e.*, the place where control of the system is exercised and beneficial use of the system obtained." *NTP*, 418 F.3d at 1317. Thus, where users located in the United States control and derive beneficial use from a device located overseas that infringes a claimed system, those users use the infringing device in the United States and commit direct infringement. *NTP*, 418 F.3d at 1317; *CIVIX-DDI, LLC v. Cellco P'ship*, 387 F. Supp. 2d 869, 884 (N.D. Ill. 2005) (holding that under *NTP*, "an alleged infringer uses a claimed system when the alleged infringer exercises control over the system and obtains beneficial use of the system"); *RealSource, Inc. v. Best Buy Co.*, 514 F. Supp.

---

[2] Defendants move for summary judgment of noninfringement for all actions that constitute infringement under § 271(a). GWIN's response brief and sur-reply brief only addresses whether Defendants' allegedly infringing computers, computer storage mediums, and performed method are used in the United States. Thus, GWIN does oppose Defendants' motion for summary judgment that Defendants do not make, sell, or offer for sale the claimed inventions in the United States and does not oppose Defendants' motion for summary judgment that Defendants do not import the claimed inventions into the United States. *See Matsushita*, 475 U.S. at 586.

[3] *NTP* dealt with the situs of use where the patent invention was not "one single device," but claimed a "system comprising multiple discreet elements." *NTP*, 418 F.3d at 1313. Similarly, the Court of Claims in *Decca*, the primary case the *NTP* court relied on, dealt with the U.S. government's use of a claimed invention for the purposes of 28 U.S.C. § 1498 where the claimed invention was "a hyperbolic radio navigation system." *Decca*, 544 F.2d at 1079.

While the asserted patents in *NTP*, and the patents-in-suit in most cases that apply *NTP*, claimed a "system," there is no reason to differentiate between the legal definition of "use" when a system allegedly infringes a claimed "system" and the definition of "use" when a device with components used collectively as a whole allegedly infringes a claimed apparatus, device, computer, or computer storage medium. *See NTP*, 418 F.3d at 1317 ("[T]he concept of 'use' of a patented method or process is fundamentally different from the use of a patented system or device."); *id.* at 1318 ("[Use of a process] is unlike use of a system as a whole, in which the components are used collectively, not individually."); *RealSource, Inc. v. Best Buy Co.*, 514 F. Supp. 2d 951, 958, 961–62 (W.D. Tex. 2007) (applying *NTP* to determine, at the motion for summary judgment of noninfringement stage, which defendants used the system that allegedly infringed the claimed "apparatus of making a transaction"); 2 Robert A Mattews, Jr., *Annotated Patent Digest* § 10:24 (2008) ("For use of the claimed system, i.e., the apparatus claims, the Federal Circuit held [in *NTP*] that the situs of the "use" is where the system is effectively controlled and where the benefits flow, and not necessarily where the system may be operationally controlled."). Thus, even though claims 23 and 24 claim a "computer storage medium" and a "computer" programmed to execute a series of steps, *NTP* applies to determine the accused system's users and its situs of use. *See RealSource*, 514 F. Supp. 2d at 961–62.

5

2d 951, 958, 961–62 (W.D. Tex. 2007) (same); *see also epicRealm Licensing, LLC v. Autoflex Leasing, Inc.*, 492 F. Supp. 2d 608, 614 (E.D. Tex. 2007) (Folsom, J.) ("In *NTP*, the defendant's customers were users of a claimed system for transmitting messages because they controlled the transmission of messages within the system by manipulating a system component."). Courts analyze the invention as a whole to determine where the "claimed system as a whole . . . is put into service," and do not focus on the situs of use of each claimed element within the claimed invention. *NTP*, 418 F.3d at 1317 ("When [the defendant's] United States customers send and receive messages by manipulating the handheld devices in their possession in the United States, the location of the use of the communications system as a whole occurs in the United States"); *epicRealm*, 492 F. Supp. 2d at 614–15 ("The patents in suit 'claim[] a method and apparatus for managing dynamic web page generation requests.' . . . Thus, in the context of the claimed invention, the allegedly infringing 'use' of the [accused software] must be the operation of the software to manage dynamic web page requests.") (quoting U.S. Pat. No. 5,894,554 (the "'554 Patent"), col. 2:17–19); *CIVIX-DDI*, 387 F. Supp. 2d at 884 n.13, 886 (denying summary judgment of non-infringement of system claim and noting "[t]he Federal Circuit [in *NTP*] implicitly rejected the proposition set forth by [defendant] that in order to 'use' a claimed system it must directly use each element of the claim").

However, the situs of use analysis differs when a patentee asserts method claims against an alleged infringer. A patented method is a sequence of actions, and use of a method requires performance of each of the recited steps. *NTP*, 418 F.3d at 1318. Thus, use of a method is unlike use of a system as a whole, in which the components are used collectively, not individually. *Id.* And thus, infringement of a method claim is precluded as a matter of law if one or more of the claimed steps is performed outside the United States. *Id.*

A party is liable for patent infringement if it "actively induces" another party to infringe a

patent. 35 U.S.C. § 271(b). A party is liable as a contributory infringer if it "offers to sell or sells within the United States a component of a patented machine, manufacture, combination or composition . . . constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). The patentee must show someone directly infringes the claims to prevail on a theory of induced infringement or contributory infringement. *Dynacore Holdings Cop. v. U.S. Philips Corp.*, 363 F.3d 1263, 1277 (Fed. Cir. 2004) ("[A]bsent direct infringement of the patent claims, there can be neither contributory infringement nor inducement of infringement.") (quoting *Met-Col Sys. Cop. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986)).

**The Accused Websites**

The parties do not delineate the allegedly infringing aspects of the accused websites. Defendants claim that to the extent any aspect of the accused websites infringe the claims, the allegedly infringing activity occurs outside the United States, specifically in Canada or Ireland.

**Claims 23 and 24**

Claim 23 claims the following invention:

A computer storage medium comprising:
code for receiving at least one prediction from each of a plurality of prediction suppliers;
code for calculating performance information reflective of the accuracy of predictions made by each of said plurality of prediction suppliers;
code for transmitting said performance information to a prediction consumer;
code for receiving a request from said prediction consumer to purchase a new prediction from a prediction supplier selected by said prediction consumer;
code for transmitting said new prediction to said prediction consumer; and
code for crediting an account of the prediction supplier selected by the prediction consumer.

'019 Patent, col. 16:3–18.

7

Similarly, claim 24 claims the following invention:

A computer programmed to:
receive at least one prediction from each of a plurality of prediction suppliers;
calculate performance information reflective of the accuracy of predictions made by each of said plurality of prediction suppliers;
transmit said performance information to a prediction consumer;
receive a request from said prediction consumer to purchase a new prediction from a selected prediction supplier;
transmit said new prediction to said prediction consumer; and
credit an account of the selected prediction supplier.

*Id.* at col. 16:19–33.

Defendants claim under *epicRealm* that where a webserver contains the allegedly infringing computer storage medium or computer, the operator of the web server, and not the handicappers or prediction consumers who visit the website, is the only person who uses the apparatus for the purposes of § 271(a). Thus, Defendants claim the situs of use is outside the United States, as the computer storage medium and computer that operate the accused websites and the software that controls the accused websites are located outside the United States.

The court in *epicRealm* applied *NTP* to determine which party, the website visitors, the website owner that uploaded the website's content onto a third-party's webserver, or the webserver owner, used the system that allegedly infringed the "method and apparatus for managing dynamic web page generation requests [claims]." 492 F. Supp. 2d at 614–15. The court analyzed which party controlled operation of the "software to manage dynamic web page requests" on the accused webserver and concluded only the owner of the webserver exercised such control. *Id.*

The court rejected the patentee's argument that the website visitors "use" the allegedly infringing aspects of the webserver when the visitors' web-clients submit uniform resource locator ("URL") requests to the webserver. *Id.* at 615, 620. The patent-in-suit claimed a method or structure configured to carry out steps involved in managing web page requests, such as intercepting

a request, routing a request, and dispatching a request, all steps allegedly done by software executed on the webserver, the operation of which neither the website visitors or the website owner could control. *Id.*

Under the patents-in-suit in *epicRealm*, the visitors' web-clients' URL requests merely provided an input to the software that allegedly infringed the claimed system. Specifically, a visitor's web-client made a request to a webserver based on the URL the user enters. *Id.* at 620 (citing '554 Patent, col. 4:54–56). The web-client would direct this request to an appropriate webserver. *epicRealm*, 492 F. Supp. 2d at 620 (citing '554 Patent, col. 4:55–57). However, if the web-client requested dynamic content, the webserver executable did not process the request. *epicRealm*, 492 F. Supp. 2d at 620. Instead, an interceptor would intercept the request and direct the request via a dispatcher to a page server for processing. *Id.* (citing '554 Patent, col. 4:58–60). The page server then processed the dynamic content request and would thus release the webserver and allow the webserver to process other requests. *epicRealm*, 492 F. Supp. 2d at 620 (citing '554 Patent, col. 5:12–20, col. 5:37–42).

Of the defendants accused of infringement, only the webserver owner operated the allegedly infringing software that managed and responded to incoming requests. *epicRealm*, 492 F. Supp. 2d at 615. The visitors could not control the manner in which the allegedly infringing webserver managed the web-clients' URL requests or generated a response. *Id.* As the patent claimed a method of managing and responding to requests—and not a method of sending a request and receiving a response—only the webserver owner exercised control of the method of managing requests. *Id.* It was immaterial that the website visitors indirectly benefitted from the aspects of the webserver that allegedly infringed the claimed invention, as the webserver owner and not the visitors exercised control over the aspects of the webserver that allegedly infringed the claimed invention.

9

*Id.*

Defendants' reliance on *epicRealm* is misplaced. Under *epicRealm* and *NTP*, the situs of use and the person who uses a device that allegedly infringes a claimed invention depends on who controls the allegedly infringing characteristics of the accused device and the location of that person. *Id.* at 614–15; *NTP*, 418 F.3d at 1317. Thus, *epicRealm* does not preclude a finding of "use" of allegedly infringing software on a webserver by website visitors as a matter of law. *epicRealm*, in conjunction with *NTP*, requires courts to determine which party exercises control and derives beneficial use of the allegedly infringing aspects of the accused system.

In this case, the patented invention is directed to an electronic marketplace for prediction information. '019 Patent, Abstract, col. 1:7–11, col. 1:52–54. Claim 23 claims a "computer storage medium" that comprises code to facilitate transactions in the prediction information market. *Id.* at col. 16:13–18. Claim 24 claims a computer programmed to execute the claimed code in claim 23. *Id.* at col. 16:19–33. Similar to the patent-in-suit in *epicRealm*, use of the claimed computer storage medium in claim 23 and the claimed programmed computer in claim 24 require control of the operation of the accused computer and computer storage medium, specifically control of the execution of the code located on the accused computer and computer storage medium.

The parties initially dispute the location of the allegedly infringing code. Plaintiff contends the allegedly infringing code resides in the United States, as Defendants transmit the hypertext markup language ("HTML") and cleint-side JavaScript code onto the computers of handicappers and prediction consumers who access the accused websites from the United States. Defendants claim the allegedly infringing code is located on its servers in Canada.

It is impossible from the record to determine the location of the allegedly infringing code. However, even if the code is wholly located in Canada, handicappers and prediction consumers

control execution of the allegedly infringing computer storage medium's code and benefit from the code's execution. The handicappers and prediction consumers control the accused information marketplace when the handicappers upload their event predictions to the accused websites and when the prediction consumers download prediction information from the accused websites. Additionally, the handicappers and prediction consumers benefit from the information exchanged in the marketplace. Sportsdirect's handicappers and prediction consumers, are located in the United States.[4] Thus, the location of the code on the allegedly infringing computer storage medium or computer in Canada does not, as a matter of law, preclude infringement of claims 23 and 24. *See NTP*, 418 F.3d at 1317 ("[Defendant's] customers located the United States controlled the transmission of the originated information and also benefitted from such an exchange of information. Thus, the location of the [component that alleged to meet a limitation of the claimed systems] in Canada did not, as a matter of law, preclude infringement of the asserted system claims in this case."). As a result, there is, at minimum, a genuine issue of material fact as to whether U.S. handicappers and prediction consumers "use" the accused websites in the United States and directly infringe claims 23 and 24.

While the Federal Circuit in *NTP*, in addition to courts that apply *NTP*, did not focus on whether the defendant's customers controlled and derived beneficial use from each component that allegedly infringed each claim limitation, handicappers and prediction consumers control and derive beneficial use from execution of computer code that allegedly infringes every element claimed in

---

[4] Mr. MacDonald, Chief Technology Officer, testified in his deposition that more than half of handicappers who provide their picks to the accused websites reside in the United States. Plaintiff's Response Brief, Ex. 1, at 131, 148–49. Assumingly, some of these handicappers access the accused website from computers located in the United States.
   Similarly, MacDonald testified that over ninety percent of the accused websites' web traffic comes from the United States. Assumingly, some of this traffic consisted of prediction consumers who purchased event predictions made by U.S. handicappers.

11

claims 23 and 24.[5] In particular, handicappers control the execution of the alleged "code for receiving at least one prediction from each of a plurality of prediction suppliers" when they access the accused websites and enter their event predictions. Similarly, handicappers control the execution of the alleged "code for calculating performance information reflective of the accuracy of predictions made by each of said plurality of prediction suppliers," as the alleged "code for calculating" is not executed until handicappers submit their predictions. Both the handicappers and prediction consumers benefit from the execution of the alleged "code for receiving" and "code for calculating," as the prediction consumers ultimately receive the transmitted prediction information and the handicappers have their accounts credited if their event predictions are correct.

The handicappers also control the execution of the alleged "code for transmitting said performance information to a prediction consumer." Absent the transmission of an event prediction by a handicapper, the alleged "code for transmitting" has nothing to transmit. Both the handicappers and the prediction consumers benefit from execution of the alleged "code for transmitting."

The prediction consumers control execution of the remaining alleged computer code. The prediction consumers control the execution of the alleged "code for receiving a request from said prediction consumer to purchase a new prediction from a prediction supplier selected by said prediction consumer," as this code executes when a prediction consumer requests to purchase a selected handicapper's event prediction. The prediction consumers also control the execution of the alleged "code for transmitting said new prediction to the said prediction consumer," as this transmission does not occur absent a prediction consumer's request to purchase a selected handicapper's event prediction.

---

[5] Execution of the code on the claimed computer storage medium is the same of execution of the code on the claimed programmed computer. Thus, the Court will analyze behavior that constitutes use of the invention claimed in claim 23, as that same behavior constitutes use of the computer claimed in claim 24.

Finally, prediction consumers control the execution of the alleged "code for crediting an account of the prediction supplier selected by the prediction consumer." The term "crediting an account" means "making an electronic record of an arrangement for payment." *GWIN, Inc. v. Don Best Sports, Inc.*, No. 2:06-CV-318, 2008 WL 379690, at *7 (E.D. Tex. Feb. 11, 2008) (Davis, J.). The alleged "code for crediting an account" cannot execute and create an electronic record of an arrangement for payment until a prediction consumer selects a handicapper. The handicappers and prediction consumers benefit from execution of the alleged "code for crediting," as the code's execution makes an electronic record to pay the handicappers and encourages the exchange of prediction information for the prediction consumers' benefit.

In total, the handicappers and prediction consumers control the execution of the code on the alleged computer storage medium and programmed computer and benefit from the code's execution. As some handicappers and prediction consumers access the accused websites from the United States, the situs of use of the allegedly infringing computer storage medium is the United States. *NTP*, 418 F.3d at 1317.

Further, there remains a genuine issue of material fact as to whether Defendants use the computer code that allegedly infringes claims 23 and 24, as there is a genuine issue of material fact as to whether that code resides on Defendants' Canadian servers or its put into action in the United States by Defendants. *See NTP*, 418 F.3d at 1316–17. Thus, summary judgment as to whether Defendants use the code that allegedly infringes claims 23 and 24 is improper.

Defendants move for summary judgment of noninfringement under § 271(b) and (c) on the basis that the handicappers and prediction consumers do not commit direct infringement when they access the accused websites. However, summary judgment of noninfringment under § 271(b) is improper, as a genuine issue of material fact exists with regard to direct infringement and there is

13

a genuine issue of material fact with regard to whether Defendants induce infringement through the content on the accused websites.  Further, summary judgment of noninfringement under § 271(c) is improper, as there is a genuine issue of material fact with regard to the location of the allegedly infringing computer code.

**Claim 25**

Claim 25 claims the following invention:

A method of obtaining prediction information, the method comprising:
viewing performance information reflective of the outcome of at least one past prediction made by at least one prediction supplier;
viewing which prediction information is available from at least one prediction supplier,
electing to purchase prediction information from a selected prediction supplier;
viewing said purchased prediction information; and
crediting an account of the selected prediction supplier.

'019 Patent, col. 16:34–45.

The "crediting an account" step is not performed in the United States.  As stated above, "crediting an account" means "making an electronic record of an arrangement for payment." *GWIN*, 2008 WL 379690, at *7.  Defendants have always created the electronic records for arrangement for payment in Ireland.  Defendants' Motion for Summary Judgment, Ex. E, at 2; *id.* at Ex. F, at 2.  It is irrelevant that Defendants' banks transfer money to U.S. bank accounts to pay handicappers, as crediting and payment are distinct actions.  *GWIN*, 2008 WL 379690, at *6 ("The ordinary meanings of debit and credit encompass accounting records and are distinct from payment.").  Thus, as one of the method steps is performed outside the United States, the situs of use is not the United States.  *NTP*, 418 F.3d at 1318.

As no one in the United States performs every step of the claimed method, Defendants cannot be liable, as a matter of law, for contributory or induced infringement.  *Dynacore Holdings*, 363 F.3d at 1277.

14

## CONCLUSION

For the abovementioned reasons, Defendants' Motion for Summary Judgment (Docket No. 140) is **GRANTED** as to whether Defendants make, sell, or offer for sale within the United States the invention claimed in claims 23, 24, and 25 and whether Defendants import into the United States the invention claimed in claims 23, 24, and 25. Defendants' motion is further **GRANTED** as to whether Defendants use within the United States the invention claimed in claim 25 and whether Defendants infringe claim 25 under 35 U.S.C. § 271(b) and (c). Defendants' motion is **DENIED** as to whether Defendants use within the United States the invention claimed in claims 23 and 24 and whether Defendants infringe claims 23 and 24 under 35 U.S.C. § 271(b) and (c).

**So ORDERED and SIGNED this 28th day of April, 2008.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**